**UNITED STATES, Appellee,**

v.

**Sergeant Larry BASS, SSN 259–82–0731, United States Army, Appellant.**

**CM 438898.**

U. S. Army Court of Military Review.

30 March 1981.

Major James F. Nagle, JAGC, argued the cause for appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Charles A. Byler, JAGC, and Carl C. Brown, Jr., Esquire.

Captain John P. Galligan, JAGC, argued the cause for appellee. With him on the brief were Major Ted B. Borek, JAGC, and Major Robert B. Williams, JAGC.

Before JONES, GARN and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

JONES, Senior Judge:

In this case we must determine whether the staff judge advocate demonstrated vindictiveness in the prosecution of appellant after the appellant had refused to accept punishment under Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815. A proper treatment of the issue requires us to set forth in some detail a history of the proceedings.

1. Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 934, respectively.

I

Charges were preferred against the appellant on 6 February 1979, alleging rape, sodomy and obstruction of justice.[1] The company and battalion commanders recommended trial by general court-martial, as did the officer who conducted the investigation pursuant to Article 32, UCMJ. After the brigade commander, who was the special court-martial convening authority, received the investigating officer's report, he attended a meeting with, among others, the staff judge advocate and chief of military justice, where disposition of the charges was discussed.

During the course of the meeting on appellant's case, the chief of military justice opined that the offense of rape would be difficult to prove, as the evidence indicated a consensual act. The staff judge advocate expressed his reluctance to pursue a charge of consensual sodomy. There was no opinion expressed as to the sufficiency of the evidence supporting the obstruction charge. The staff judge advocate concluded his participation by suggesting to the brigade commander that Article 15 punishment for the appellant's activities would be sufficient if the commander agreed with the chief of military justice's assessment of the evidence. At no time did the staff judge advocate recommend that anyone in the appellant's chain of command dismiss any charge or proceed solely with non-judicial punishment.

On 8 March 1979, the battalion commander offered appellant punishment under Article 15, UCMJ, for conduct alleged to constitute a violation of company policy, specifically, taking a female into a room of the barracks. The appellant refused to accept this offer and demanded trial by court-martial.

The staff judge advocate was informed of the appellant's demand for court-martial on 12 March 1979, and as a result, directed the chief of military justice to re-examine the available evidence to determine what

charges could be based properly thereon. Additional charges alleging violation of the company's visitation policy, adultery and fraternization with a trainee were preferred by the appellant's company commander on 16 March 1979.[2] The investigation required by Article 32, UCMJ, was reopened to consider the evidence supporting these additional charges.

Appellant's trial defense counsel spoke to the staff judge advocate on 23 March 1979 concerning the reinstitution of Article 15 proceedings for the appellant's conduct. During this meeting counsel stated that the appellant's demand for court-martial was a mistake and that appellant wished to retract this demand and accept nonjudicial punishment. The staff judge advocate agreed that the appellant's demand was ill-advised, but felt the Government had made every effort to accommodate the appellant. The staff judge advocate, using earthy language, then stated in effect that by refusing to proceed under the provisions of Article 15, the appellant had defied the Army and that now the Army was showing him what could happen as a result of his defiance. The staff judge advocate informed the appellant's counsel, however, that he would consider an offer to plead guilty to the additional charges in return for referral of those charges to special court-martial, provided the offer was made before the scheduled Article 32 hearing. No offer was made, the investigative hearing was held, and the completed report was forwarded to the brigade commander on 30 March 1979.

On 3 April 1979, the staff judge advocate received the case, together with the brigade commander's recommendation for trial by general court-martial on all charges. Having been advised previously that the rape charge was difficult to prove, the staff judge advocate personally examined the evidence against the appellant and determined there was sufficient reason to proceed on all charges. A pretrial advice was prepared reflecting this opinion on 4 April 1979, and the appellant's case was referred to general court-martial on 6 April.

During a preliminary session of the appellant's trial, his defense counsel moved to dismiss all charges on the basis that they were referred as a result of the staff judge advocate's vindictiveness. The military judge heard evidence on this motion and ruled that the conversation between the trial defense counsel and the staff judge advocate on 23 March demonstrated an appearance of impermissible personal involvement of the staff judge advocate in the appellant's case, thereby disqualifying him from acting in the case after that date. This rendered the pretrial advice a nullity.

The military judge recessed the court to await the convening authority's decision on proceeding. The convening authority requested and received permission to withdraw the charges. He then forwarded them to the next superior command for action. That command in turn transmitted them to the convening authority at Fort Jackson.

The convening authority at Fort Jackson referred to general court-martial the original charges and only the violation of the visitation policy from the additional charges. The appellant pleaded not guilty to those charges. He was convicted of rape, sodomy and violation of the visitation policy; acquitted of obstruction of justice; and sentenced to reduction to the lowest enlisted grade, total forfeitures, confinement at hard labor for eight years, and a dishonorable discharge.

## II

The appellant urges this Court to set aside the findings of guilty of rape and sodomy and dismiss those charges, leaving only a conviction of violation of the company visitation policy. The basis of his request is the alleged vindictiveness of the staff judge advocate at Fort Gordon in recommending referral of all charges to trial by general court-martial. The appellant asserts that his prosecution was in retaliation for his refusal on 8 March to submit to

---

2. Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892 and 934, respectively.

non-judicial punishment under the provisions of Article 15, UCMJ.

We agree with the appellant that his demand for court-martial when he was offered Article 15 punishment resulted in the eventual conviction which he currently contests, but we find that this conviction was properly obtained and that he was afforded, at all times, due process of law.

The appellant contends that the Supreme Court's decision in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), is controlling here. In *Pearce*, the Supreme Court reversed a lower court ruling that had permitted a trial judge to impose a more severe sentence upon retrial of a defendant who had successfully appealed his first conviction. The Court reasoned that increased punishment upon retrial after the successful exercise of a constitutional or statutory right to appeal may be violative of due process protections. The Court stated that vindictiveness must play no part in a sentence imposed upon retrial and that an accused must be free from an apprehension of retaliation. The Court then fashioned a rule requiring a sentencing judge to place his reasons for imposing a more severe sentence upon retrial on the record.

Later, in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Supreme Court extended the rationale of *Pearce* to the action of a prosecutor in obtaining a superseding indictment and substituting a felony offense for a misdemeanor after the defendant had exercised his right to appeal his misdemeanor conviction to a trial *de novo* in a superior court. The Court stated:

> The rationale of our judgment in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that "since the fear of such vindictiveness may . . . deter . . . exercise of the right to appeal or collaterally attack his first conviction . . . a defendant [must] be freed of apprehension of such a retaliatory motivation. . . ." A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo* without apprehension that the state will retaliate by substituting a more serious charge. . . . (417 U.S. at 28, 94 S.Ct. at 2102).

The most recent Supreme Court case on this question is *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), which signalled somewhat of a retreat from *Pearce* and *Blackledge*. The appellant in *Bordenkircher* was offered a favorable sentence recommendation by the prosecutor in return for a plea of guilty to a bad check charge. The defendant also was threatened with an additional indictment charging him as an habitual offender, thereby increasing his sentence liability upon conviction to mandatory life imprisonment, if he failed to plead guilty. The defendant pleaded not guilty, was reindicted as a recidivist, convicted and sentenced to life imprisonment. The Court found the prosecutor's actions permissible even though the Government was in possession of the evidence supporting the habitual offender indictment at the time the original indictment was returned and the defendant's plea of not guilty directly resulted in the superceding indictment. The Court distinguished *Pearce* and *Blackledge* as cases involving circumstances where the state unilaterally imposed a penalty upon a defendant who chose to exercise his statutory right to attack his original conviction, a situation significantly different from the give and take of the plea bargaining process found in *Bordenkircher*. The Court specifically found that the government's actions were not evidence of retaliatory conduct because the defendant was free to accept or reject the prosecution's offer.

▪ We conclude from *Bordenkircher* that the decision of whether to prosecute and what crime to charge, as long as the government has probable cause to believe a particular defendant committed an offense, rests entirely within the prosecutor's discretion. Additionally, the Court stated that a prosecutor's desire to induce a defendant's

guilty plea is a proper consideration in the exercise of that discretion.[3]

Although none of the cases discussed above are precisely in point here, as military criminal procedures are different and the functions of military officials involved in the criminal justice chain often have no civilian parallel,[4] the cases are sufficiently analogous to establish the guidelines which we must follow.

## III

We believe that when an accused makes an assertion of prosecutorial vindictiveness, he must come forward and demonstrate that a government official, in our case the staff judge advocate, apparently acted vindictively. Although an accused need not prove the existence of actual vindictiveness, a showing of a mere possibility of vindictiveness is insufficient. *Blackledge v. Perry, supra; United States v. Andrews*, 633 F.2d 449 (6th Cir. 1980). The Government is, of course, afforded the opportunity to rebut the appearance of a vindictive prosecution, but a showing of good faith or prosecutorial inadvertence alone is not sufficient rebuttal. The weight given the government's rebuttal is dependent upon the balance struck between the nature of the accused's interests and the preservation of prosecutorial discretion.

In the instant case the appellant exercised a statutory right to refuse nonjudicial punishment and to demand trial by court-martial. The Government responded by reevaluating the evidence, preferring additional charges, and referring the original and additional charges to trial by general court-martial. The Government in the person of the staff judge advocate also responded with ill-advised remarks expressing his intention to prosecute the case to the fullest extent. These facts raise an appearance of vindictiveness, but fail to support a finding of actual vindictiveness. Our concern then is whether the government's explanation of these occurrences, evaluated in light of the balance struck between the appellant's and the government's interests, overcomes the presumptive due process violation founded upon evidence offered by the appellant.

We agree with the appellant's assertion that he and every service member has a substantial right to demand trial by court-martial upon the offer of Article 15 punishment without apprehension that the Government will retaliate by preferring charges in an unreasonable number or degree of severity or by referring the charges to an unnecessarily severe level of court-martial. We disagree, however, with his argument that only the offense for which nonjudicial punishment was offered may be referred for trial in the resultant court-martial. Imposition of such a requirement would be an unreasonable restriction on the exercise of prosecutorial discretion.

The Government argues that the very nature of a demand for court-martial upon the offer of Article 15 compels judicial disposition of the charged offenses. Whether or not that is so, at least the possibility of judicial disposition of the appellant's demand, in the form of a general court-martial, is not an unreasonable nor an unexpected result.[5]

Upon the demand for trial, the Government has an obligation to evaluate the evidence pertaining to the service member's activities in order to determine which crime to charge and which level of court can most effectively dispose of the case. Great deference must be given to the individual commanders in their exercise of prosecutorial discretion.

---

3. An attempt at reconciling *Pearce, Blackledge*, and *Bordenkircher*, was made by the *en banc* Court of Appeals in *United States v. Andrews*, 633 F.2d 449 (6th Cir. 1980).

4. Civilian jurisprudence knows no Article 15 procedure and the staff judge advocate has no civilian counterpart.

5. We think that it is unrealistic to assume a commander would offer a service member Article 15 punishment and then decline to proceed to court-martial upon the member's demand. It is similarly unrealistic to assume that a commander would waste time by offering to proceed under the provisions of Article 15 if his desire was to proceed to trial by court-martial.

The balance of these interests, the appellant's right to demand trial without fear of prosecutorial retaliation and the government's right to exercise prosecutorial discretion, tips decidedly in the government's favor in this case. The record demonstrates that the appellant's commanders, after his demand for court-martial, based their recommendations upon available evidence without consideration or knowledge of the staff judge advocate's opinion. Their uniform recommendations for trial by general court-martial were consistent with their similar recommendations on the original charges. Additionally, the Government has shown that the offer of Article 15 was premised upon an erroneous evaluation by members of the staff judge advocate's office of the available evidence. We find these facts, when evaluated in light of the balance to be struck between the competing interests discussed above, sufficient to overcome the appearance of vindictiveness.[6]

The findings of guilty and the sentence are affirmed.

Judge GARN and Judge LEWIS concur.

---

**6.** The forwarding of the case to Fort Jackson for appropriate action effectively removed any prejudice to the appellant from the Fort Gor- don staff judge advocate's disqualifying personal involvement in the case.