**Jose A. MARTINEZ, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 20–89C.**

United States Claims Court.

Nov. 3, 1989.

Louis P. Font, Boston, Mass., for plaintiff.

James M. Kinsella, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant. Capt. Melissa Wells–Petry, Office of the Judge Advocate General, of counsel.

### OPINION

NETTESHEIM, Judge.

This case is before the court after argument on defendant's motion for summary judgment and plaintiff's opposition thereto.

## FACTS

Jose A. Martinez ("plaintiff"), a dishonorably discharged non-commissioned officer of the United States Army (the "Army"), brings suit alleging illegal discharge. Plaintiff seeks an order voiding his court-martial conviction, correcting his military records to expunge the court-martial, awarding him backpay, and reinstating him to active duty.

Plaintiff enlisted in the Army on September 13, 1971, after having served approximately one and one-half years in the United States Marine Corps. He completed two combat tours in Vietnam for which he was awarded the Bronze Star, two Purple Hearts, and other decorations. On May 14, 1982, while stationed at Fort Lewis, Washington, plaintiff, then a staff sergeant, allegedly acted with disrespect toward a fellow staff sergeant and a superior sergeant first class and with disobedience toward the same sergeant first class and was charged accordingly. Plaintiff's immediate commander, Captain Timothy R. Ascani, found plaintiff guilty, basing his decision upon review only of the documents of record. A plenary investigation into the May 1982 incident was not undertaken. Captain Ascani relieved plaintiff of his supervisory duties.

Due in part to the above incident, plaintiff received an unfavorable Enlisted Evaluation Report ("EER") on August 9, 1982, rating plaintiff as substandard and possessing a poor attitude. Plaintiff refused to accept the EER and would not acknowledge its validity with his signature. He also refused to accept nonjudicial punishment under Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815 (1982), and instead elected trial by court-martial.

On August 12, 1982, plaintiff filed a request for redress of grievances with Captain Ascani under Article 138, 10 U.S.C. § 938, alleging improper denial of requests for an investigation of the May 1982 incident. This request was denied. Plaintiff then submitted an undated second request to Captain Ascani's superior officer, Maj. Gen. Robert M. Elton, which was also denied.

On October 7, 1982, plaintiff reversed his position with respect to discipline for the May 1982 incident and accepted nonjudicial punishment for these offenses. His punishment included demotion from grade E–6 (staff sergeant) to E–5 (sergeant) and forfeiture of $520.00 pay per month for two months.

Also on October 7, 1982, plaintiff first learned of new charges pending against him consisting of allegations of sodomy, bribery, indecent acts with a male servicemember, communication of a threat, solicitation of a subordinate to introduce marijuana onto a military installation, use of marijuana, transfer of marijuana to a subordinate servicemember, and unlawful assault consummated by a battery against an enlisted servicemember. These offenses allegedly took place between July 15 and October 7, 1982. The prosecutor so charged plaintiff on October 7, and plaintiff was immediately imprisoned in a homosexual observation cell.

Service on plaintiff of the corresponding court-martial charges occurred on October 12, 1982, with additional charges served on November 3, 1982. Plaintiff was subjected to solitary pretrial confinement for 103 days prior to his trial. The general court-martial trial took place on January 17–18, 1983, and plaintiff pleaded not guilty to all charges.

During trial the Army called three principal witnesses, each of whom received immunity in exchange for his testimony. First, Specialist Fourth Class ("SP–4") David M. Dunham testified that while at plaintiff's apartment, he became intoxicated and passed out fully clothed on the living room floor. When he awoke, he was naked from the waist down, and plaintiff, who was also partially naked, was on top of him. SP–4 Dunham further stated that plaintiff specifically asked him to sell marijuana to other soldiers at Fort Lewis. According to SP–4 Dunham, plaintiff offered him a $100.00 bribe, which he refused, to keep quiet about the incident at plaintiff's apartment.

Second, Pvt. James B. Michel testified that he and plaintiff drank alcohol and

smoked marijuana in each other's presence in plaintiff's apartment. The witness stated that plaintiff made homosexual advances toward him while the former was asleep on plaintiff's living room floor. Pvt. Michel stated that he awoke to find both himself and plaintiff naked from the waist down, with plaintiff on top of him. Plaintiff also allegedly asked Pvt. Michel to sell marijuana on the base and promised to give him ten grams of marijuana if Pvt. Michel sold $100.00 of the substance and brought the money to plaintiff. Pvt. Michel testified that he agreed and placed the marijuana in his room locker. Before the marijuana could be sold, however, it was stolen. When Pvt. Michel informed plaintiff that his marijuana was stolen and that plaintiff had lost the $100.00, plaintiff became agitated and began continually harassing and threatening Pvt. Michel. These hostilities culminated with plaintiff's physical attack upon Pvt. Michel in Michel's room.

Finally, SP–4 Larry D. England testified against plaintiff. He stated that both plaintiff and he became intoxicated and smoked marijuana belonging to SP–4 England at plaintiff's apartment. SP–4 England also claimed that plaintiff made sexual advances toward him while he was passed out on plaintiff's living room floor.

While in pretrial confinement, plaintiff wrote at least two letters, one each to SP–4 Dunham and Pvt. Gary J. Floriddia, both of which were introduced into evidence during the court-martial proceeding. Both letters pleaded with the recipients to retract their allegations and asked each to influence others to do the same, by urging that "[a]ll they have to do is say they can't support their allegations because they were trying to get even with me." Regarding the upcoming court-martial, the letter to SP–4 Dunham read, in part: "I'm going to admit everything [England] and I have done. If I go down, then I'm taking everyone I can, and that means bad discharges for us. I have a lot of proof for everything I say about anybody." Concerning marijuana use, the Floriddia letter read in part: "[M]ake sure they don't say anything about their being over to my house and smoking dope...." Plaintiff further stat-

ed in this letter that "[i]f you can convince ... [England and Dunham] to get out of this bullshit, and the only way is for them to tell their CO [commanding officer] that they lied about me and Michel is lying about everything else, I can handle Michel...." Neither letter made any express reference to the sex-related charges and no physical evidence of marijuana was introduced at trial.

At the outset of the court-martial, the head judge noted that several counts of wrongful fraternization had been dismissed on motion and dismissed others, so that a total of four had been dropped. Consequent to the court-martial, plaintiff was found guilty of four marijuana-related offenses, one specification of an assault consummated by a battery, one specification of wrongful solicitation to commit an offense, and two specifications of obstruction of justice. He was found not guilty of all other specifications, including bribery, indecent acts, obstruction of justice, wrongful solicitation to commit an offense, and sodomy. However, in spite of being found not guilty of sodomy, plaintiff remained in a homosexual observation cell at Fort Lewis pending his transfer on February 18, 1983, to Fort Leavenworth, Kansas.

Plaintiff received a dishonorable discharge, six years confinement at hard labor—reduced to reflect his pretrial incarceration—and reduction to the lowest enlisted grade. Both plaintiff's court-martial record and sentence were reviewed and affirmed by the United States Army Court of Military Review and the United States Court of Military Appeals.

On December 24, 1985, plaintiff filed an application with the Army Board for the Correction of Military Records (the "ABCMR" or the "board") seeking to void the unfavorable 1982 EER and the resulting punishment received pursuant to Article 15. Plaintiff also requested that the ABCMR declare the court-martial sentence null and void, that he receive credit for pretrial confinement, that the ABCMR provide an Article 138 redress of grievances, and that the board investigate alleged perjury by witnesses at his court-martial.

The ABCMR found that there was no record evidence to establish that the EER or the Article 15 punishment was vindicative or retaliatory. Second, the board held that, insofar as plaintiff challenged the August 1982 EER, a statute of limitations requiring that a request for correction be made within three years after discovery of the alleged error or injustice, unless the interests of justice require otherwise, barred his application. 10 U.S.C. § 1552(b) (1988). The ABCMR found that justice did not require waiver of the statute in this situation. Third, the board found itself "precluded by law from disturbing the finality of the court-martial conviction" and that it lacked authority to evaluate the credibility of witnesses in a court-martial proceeding. The reference presumably was to 10 U.S.C. § 1552(f). Accordingly, the ABCMR denied all requested relief on April 13, 1988. Plaintiff filed suit in the Claims Court on January 17, 1989.

## DISCUSSION

A decision of the ABCMR is on review. In order to overturn the ABCMR's decision, plaintiff must show that the decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Cohn v. United States*, 15 Cl.Ct. 778, 788 (1988) (citing cases). Plaintiff's complaint predicates the illegality of the Army's actions on six grounds: 1) His conviction and punishment at trial by general court-martial violated his constitutional right to due process because of vindictive prosecution; 2) his conviction and punishment were unlawful due to unreasonable multiplication of charges which violated his right to a fair trial; 3) the evidence adduced at trial to secure his conviction for offenses involving marijuana consisted solely of uncorroborated testimony of his alleged accomplices; 4) the evidence adduced at trial was insufficient to secure a conviction for the charge of assault; 5) prosecution witnesses improperly received immunity; and 6) the

decision of the ABCMR was arbitrary, capricious, and not based upon law.[1]

Moving for summary judgment complete as to all of plaintiff's claims, defendant contended that plaintiff raised only insubstantial constitutional claims; that the standard of judicial review for court-martial convictions is limited; that this court may only revisit the ABCMR's decision if it was legally void, not merely voidable; that the ABCMR's decision refusing to disturb the court-martial was not arbitrary or capricious; and, that, consequently, the court-martial conviction should be upheld. Although the Claims Court typically reviews a military correction board decision in a non-disability pay case based on the record developed before the board, *Long v. United States*, 12 Cl.Ct. 174, 176–77 (1987), plaintiff did not cross-move based on the record. The standard of review, however, is unaffected, since the basis for plaintiff's opposition does not call for *de novo* review. *Cf. infra* note 2.

Plaintiff opposed defendant's motion on the ground that the prosecution for the offenses tried by court-martial was presumptively vindictive. He also contended, based on an affidavit offered for the first time in the Claims Court, that plaintiff was subjected to actual vindictiveness in that he was placed in confinement and convicted based on perjured testimony. *See infra* note 2. Defendant is entitled to summary judgment in its favor as to the issues to which plaintiff did not respond, because plaintiff failed to oppose defendant's motion on point and because, based on a review of the record and defendant's authorities, the court concludes that defendant established its entitlement to judgment in its favor on these claims. RUSCC 56(c).

*Bowling v. United States*, 713 F.2d 1558, 1560–61 (Fed.Cir.1983), held that judicial review of a court-martial is circumscribed to consider only a claim that the court-martial proceedings were a deprivation of fun-

1. Count I of plaintiff's complaint sought relief from vindictive prosecution. Count II addressed unreasonable multiplication of charges, as well as improperly granted immunity; insufficient evidence to support assault and obstruc- tion charges; and an improper marijuana conviction based on uncorroborated testimony. Count III claimed that the ABCMR's decision was arbitrary and capricious.

damental fairness so as to impede due process. *See generally Williams v. Secretary*, 787 F.2d 552 (Fed.Cir.1986) (Markey, C.J.) Plaintiff asserts that his conviction is void as a matter of law under the fifth amendment's Due Process Clause because of actual prosecutorial vindictiveness or the presumption of such conduct. As a threshold requirement to a claim of presumptively vindictive prosecution, plaintiff's subsequently indicted activity must originate from the same operative facts that lead to the original indictment. But,

> [w]here the subsequently indicted activity is separate and distinct from the criminal conduct originally indicted, however, a defendant's due process rights are offended only if there is actual vindictiveness as opposed to the mere apprehension of vindictiveness....

*United States v. Spence*, 719 F.2d 358, 363 (11th Cir.1983) (citing *United States v. Thomas*, 593 F.2d 615, 624 (5th Cir.1979)). In such cases the court examines "the prosecutor's actions rather than defendant's reactions." *Hardwick v. Doolittle*, 558 F.2d 292, 302 (5th Cir.1977), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978).

Plaintiff acted with disrespect and disobedience toward two non-commissioned officers on May 14, 1982; was charged accordingly on June 17, 1982; and received Article 15 punishment on October 7, 1982. From July to October 1982, he allegedly committed various other offenses, such as use of marijuana and obstruction of justice; was so charged on October 12 and November 3, 1982; and was court-martialled on January 17 and 18, 1983. These later

charges bore no factual relationship to the original charges as to which plaintiff ultimately elected to accept punishment under Article 15, and, hence, plaintiff's claim appropriately merits consideration under the standard gauging actual vindictiveness.

Plaintiff contends that a claim of actual vindictiveness is supported by the record, although he cites no cases supporting this proposition. As proof of his claim, plaintiff draws attention to the harsh prison conditions, the large number of charges brought, and the affidavit of David M. Dunham, who is no longer a servicemember. In response to defendant's motion for summary judgment, plaintiff submitted an affidavit wherein Mr. Dunham recanted his testimony at plaintiff's court-martial. Mr. Dunham averred: "Everything I stated at the trial was not true[.] And I believe statements made by Michel and England were not true as well...." Affidavit of David M. Dunham, Sept. 5, 1989, at 1. According to his affidavit, Mr. Dunham attempted to avoid giving false testimony, but "was threatened with punishment if I did not make a statement the way ... [Criminal Investigation Division] wanted." *Id.* Mr. Dunham further averred: "What bothered me the most was the fact that Michel was actually caught with drugs but never punished whereas SGT Martinez was not. It appeared to me by comments made by Cpt Johnson [plaintiff's commanding officer] that SGT Martinez was the one the chain of command wanted...." *Id.* at 2. Plaintiff contends this affidavit supports a claim of actual vindictive prosecution.[2]

Actual vindictiveness may not be demonstrated easily. "To prove actual vindictive-

---

2. In his statement of genuine issues filed pursuant to RUSCC 56(d)(2), plaintiff put forward the issue of whether plaintiff's pretrial confinement and conviction were obtained at Fort Lewis, Washington, on the basis of perjured testimony. Plaintiff cited as record support for this proffered genuine issue of material fact Mr. Dunham's affidavit. It may well be that Mr. Dunham committed perjury. The record suggests that the testimony of all the witnesses supporting the charges of homosexuality was, at a minimum, suspect. However, that circumstance is reviewable neither by the ABCMR nor this court. The allegation pertains to the merits of plaintiff's conviction and should have been pur-

sued on direct review. The allegation that plaintiff's command knew that the testimony was perjured, however, is reviewable under the rubric of plaintiff's claim of prosecutorial vindictiveness. Nonetheless, Mr. Dunham's affidavit does not speak to what the command knew, or should have known, as discussed in the text of this opinion. It should be noted that plaintiff failed to bring the Dunham affidavit to the board's attention or to offer any explanation to this court why it was not available for consideration by the ABCMR. *See Wales v. United States*, 14 Cl.Ct. 580, 593, *aff'd mem.*, 865 F.2d 268 (Fed.Cir.1988) (Table).

ness, there must be objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *United States v. Whaley*, 830 F.2d 1469, 1479 (7th Cir.1987) (citing *United States v. Goodwin*, 457 U.S. 368, 380–81, 102 S.Ct. 2485, 2492–93, 73 L.Ed.2d 74 (1982)). For example, no actual vindictiveness exists where defendant "did not allege ... that the prosecutor had a personal stake in the case or that he wanted to engage in 'self-vindication' against the [defendant]." *Whaley*, 830 F.2d at 1479–80. As observed by defense counsel in argument, Mr. Dunham's averments speak to his own motivations and do not implicate the Army investigators or plaintiff's superior officers with knowledge that Mr. Dunham was dissembling. Mr. Dunham states:

> I tried to get out of the conspiracy at the very beginning before CID questioned me, but was threatened with punishment if I did not make a statement the way they wanted. Where I was unsure of an act or change, because of my state of drunken[n]ess, I was told to say I was positively sure, which I wasn't. I made several attempts not to testify because of this, but was told I would be punished for withholding information. I was very frightened but saw no way out except to continue to [lie]. In Oct 1982 Cpt Johnson called on Michel, England and I to write a statement and swear to them that SGT Martinez was a [threat] to us and had threatened us. He said in order for him to put Martinez into the stockade he had to have these statements. The first statement I made Cpt Johnson said it wasn't enough, that it had to be of verbal [threats] or danger of my life. So I [redid] it and I believe Michel and England did the same. I was very much bothered by this, because SGT Martinez did not know anything about the charges we made, and no rumors of homosexual conduct by SGT Martinez were ever made by anyone. It was also a lie and I thought it was wrong. Cpt. Johnson was the commander and he had the power to hurt or reward a soldier. I felt threat-ened by him and CID if I did not say the things I knew were false.

Dunham Aff. at 1–2.

■ Under *Hardwick*, 558 F.2d at 302, this court must examine the actions of the prosecutor, not the reactions of the accused, in determining a claim of actual vindictiveness. Even if plaintiff's pretrial confinement was a decision of the prosecutor, plaintiff failed to show any involvement of the prosecutor in the decision to continue his detention in homosexual observation post-trial. Since the prosecutor in the case before the court, due to the timing of plaintiff's actions, based the court-martial charges on plaintiff's subsequent misconduct and since the Dunham affidavit fails to impute any actual hostile motive to the prosecutor, the claim of actual vindictiveness must fail. If plaintiff's argument were accepted, the military would be foreclosed from offering a servicemember Article 15 punishment on pain of forfeiting the right to court-martial the servicemember for charges arising subsequent to the earlier charges, but while the Article 15 proceedings were pending.

However, even if the appropriate standard is presumed vindictiveness, plaintiff's claim for relief fails. Regarding the presumption of vindictiveness, plaintiff infers that he was court-martialled and discharged in retaliation for having exercised various legal rights, such as filing an Article 138 formal complaint of wrongdoing against his commander and exercising his right to Article 15 punishment, after having refused originally to plead guilty to those charges. In essence, plaintiff contends that vindictive and retaliatory motives may not spawn constitutionally proper punishment. Although this may be true,

> [t]he imposition of punishment is the very purpose of virtually all criminal proceedings. The presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to non-criminal, protected activity. Motives are

complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the [Supreme] Court has found it necessary to "presume" an improper vindictive motive. Given the severity of such a presumption, however—which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct— the [Supreme] Court has done so only in cases in which a reasonable likelihood of vindictiveness exists.

*United States v. Goodwin*, 457 U.S. at 372–73, 102 S.Ct. at 2488, 73 L.Ed.2d 74.[3] The case law defining presumptions of prosecutorial vindictiveness distinguishes between a prosecutor's conduct at a pretrial stage and his conduct during or after the trial. The second class of cases arises out of a combination of defendant's invocation of a legal right after the trial has begun and a corresponding action by a judge or prosecutor that actually or potentially increases the severity of the defendant's sentence.

Generally, in a non-pretrial setting, a more severe sentence may be placed on a defendant than was handed down in the original trial based on the defendant's conduct subsequent to the first conviction without running afoul of the due process clause. *North Carolina v. Pearce*, 395 U.S. 711, 723–26, 89 S.Ct. 2072, 2079–81, 23 L.Ed.2d 656 (1969). The Supreme Court further stated that a defendant's exercise of his rights must be free from the apprehension of prosecutorial vindictiveness. *Blackledge v. Perry*, 417 U.S. 21, 28, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974). Of course, actual vindictiveness need not be proved; the mere appearance of improper prosecutorial motive is sufficient to void a criminal conviction. *Id.*

"The decisions in these cases reflect a recognition by the Court of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided." *Goodwin*, 457 U.S. at 376, 102 S.Ct. at 2490. Doctrines such as *res judicata*, the law of the case, and double jeopardy "might also subconsciously motivate a vindicative prosecutorial or judicial response to a defendant's exercise of his right to obtain a retrial of a decided question." *Id.* at 377, 102 S.Ct. at 2490. The potential due process violation in these cases " 'lay not in the possibility that a defendant might be deterred from the exercise of a legal right ... but rather in the danger that the ... [Government] might be retaliating against the accused for lawfully attacking his conviction.' " *Id.* at 378, 102 S.Ct. at 2491 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 667–68, 54 L.Ed.2d 604 (1978)). The Court in *Bordenkircher* held that a presumption of prosecutorial vindictiveness had not been shown where the prosecutor carried out pretrial a threat to have the accused reindicted on more serious charges if the accused refused to plead guilty to the original charge and if the second charge had the identical factual origin as the original charge, was fully justified by the evidence, and such knowledge was in the prosecutor's possession at the time of the original indictment.

Different standards govern prosecutorial discretion exercised at a pretrial stage. A retrial case, where the Government unilaterally imposes a penalty on a defendant after he exercised a legal right, is "a situation 'very different from the give-and-take negotiation common in plea bargaining between the prosecution and the defense, which arguably possess relatively equal bargaining power.' " *Bordenkircher*, 434 U.S. at 362, 98 S.Ct. at 667 (quoting *Parker v. North Carolina*, 397 U.S. 790, 809, 90 S.Ct. 1458, 1479–80, 25 L.Ed.2d 785 (1970)).

While prosecutorial vindictiveness is possible in pretrial settings, "the complexity of pretrial decisions by prosecutors suggests that judicial evaluation of those decisions

---

3. *Goodwin* took place in a pretrial setting where respondent refused to accept a plea bargain for misdemeanor charges, pleaded not guilty, and requested trial by jury. The prosecution responded by indicting and convicting respondent on a felony charge arising under the same facts as in the misdemeanor indictment, while the misdemeanor charges were still pending. The Supreme Court ruled that a presumption of prosecutorial vindictiveness was unwarranted.

should be especially deferential." *Newton v. Rumery,* 480 U.S. 386, 397 n. 7, 107 S.Ct. 1187, 1194 n. 7, 94 L.Ed.2d 405 (1987). In determining which charges to bring against a defendant,

> so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute ... generally rests entirely in his discretion.... [So long as] "the selection was [not] [brackets in original] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

*Bordenkircher,* 434 U.S. at 364, 98 S.Ct. at 668 (quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)) (footnote omitted).

Further, the presumption of prosecutorial vindictiveness requires cautious application in a pretrial setting, since in preparing for trial, a prosecutor may unearth additional facts warranting additional charges or may simply realize that the information he possesses has broader implications. *Goodwin,* 457 U.S. at 381, 102 S.Ct. at 2492. But, once a trial has begun or a conviction has been obtained, "it is much more likely that the ... [Government] has discovered and assessed all of the information against an accused and has made a determination ... of the extent to which he should be prosecuted." *Id.* Thus, any post-trial change in the charging order has an inherently greater chance of being improperly motivated than does a pretrial decision. *Id.*

The filing of court-martial charges was a pretrial decision of the prosecutor. That plaintiff was also facing other, separate charges does not alter this fact. These court-martial charges arose from subsequent and different acts than the acts giving rise to the Article 15 proceeding and, therefore, constituted the beginning of a new, distinct proceeding. Consequently, plaintiff's claim of prosecutorial vindictiveness must be evaluated by pretrial standards. First, plaintiff argues that since the court-martial charges immediately fol-

lowed the assertion of his Article 15 rights, the charges must have been retaliatory.

The timing of these charges creates no appearance of vindictiveness or retaliatory motive. Since the later charges post-date the original charges, it is quite possible, and probably likely, that the prosecutor only received sufficient information regarding the drug and obstruction charges after the Article 15 charges were filed. That plaintiff received Article 15 punishment on the same day on which he was charged with the court-martial offenses is, in the absence of any persuasive evidence by plaintiff, merely a coincidence. The record before the ABCMR is devoid of any such showing, other than plaintiff's contention that he should have been advised that he would be charged with additional offenses for subsequent and different acts before he was permitted to elect Article 15 punishment. This contention is supported by neither regulations or case law. *See United States v. Corona,* 849 F.2d 562, 567 (11th Cir.1988) (where Government began investigating possibility that defendant violated Gun Control Act prior to his mistrial and appeal of the superseding indictment, vindictiveness claim must fail); *United States v. Ward,* 757 F.2d 616, 620 (5th Cir.1985) (no vindictiveness existed where present prosecution for contempt not pursued because prosecutor's failure to obtain appellant's cooperation in first instance, but, rather, follows appellant's subsequent and distinct acts of disobedience).

Second, all of the cases finding vindictive prosecution to exist that have been cited to this court, as well as the additional cases discussed, share one factor: The accused, by exercising a legal right, has made the Government's burden in prosecuting him more onerous by doing so. *See, e.g., Bordenkircher,* 434 U.S. at 358–59, 98 S.Ct. at 665–66 (where plaintiff refused to plead not guilty, court forced to incur inconvenience of trial). The case at bar, in contrast, presents a situation where the Army's job was made easier by plaintiff's actions. Once plaintiff agreed to accept Article 15 punishment, the Army no longer was required to incur the time and monetary investment to proceed by court-martial. In

this context for the court to presume prosecutorial vindictiveness, the record must show that the Army was "out to get" plaintiff and that the less severe sentences imposed by Article 15 were insufficient to appease the Army's vindictive motives. The record does not support such an inference.

 Finally, plaintiff claims that "massive overcharging" by the prosecutor, Plf's Br. filed Sept. 27, 1989, at 7, permits a presumption of prosecutorial vindictiveness. Plaintiff originally was charged with 22 offenses. Four charges were dismissed before court-martial, and plaintiff was found guilty of only eight offenses. Plaintiff contends that, from a comparison of the original charges to the number of final convictions, the inference can be made that the Army was taking retaliatory action against him.

Initially, the number of charges falls under the broad category of pretrial prosecutorial decisions and, as such, is entitled to a large measure of deference by this court. *Newton*, 480 U.S. at 396, 107 S.Ct. at 1194. More importantly, as long as probable cause exists to believe an offense was committed, the charging decision rests solely within the prosecutor's discretion. *Bordenkircher*, 434 U.S. at 364, 98 S.Ct. at 668 (citing cases); *United States v. Bass*, 11 M.J. 545, 548 (A.C.M.R.1981). Plaintiff's acquittal of eight charges, including some marijuana-related offenses, demonstrates that factual uncertainties were resolved in his favor, not that the charges were ill-founded. *United States v. Howard*, 24 M.J. 897, 905 (C.M.A.1987) (accused, charged with 319 specifications, not prejudiced by sheer number of allegations when court carefully weighed evidence and returned findings of not guilty where evidence uncertain). That plaintiff was found not guilty of all the homosexual charges without more, *see supra* note 2, does not taint the prosecutor, since plaintiff was convicted of most of the simultaneously filed marijuana offenses.

Plaintiff has failed to demonstrate that the decision of the ABCMR was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted. The Clerk of the court shall dismiss the complaint.

No costs.