32 F.3d 569
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Andrew MENICHINO, Defendant-Appellant.
 Nos. 93-1674, 93-1675.
 United States Court of Appeals, Sixth Circuit.
 July 20, 1994.
 
 Before: JONES, NORRIS, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Andrew Menichino, was charged in a 46-count indictment with various offenses related to bank fraud, including (1) conspiracy to commit bank fraud, criminal misapplication of bank funds, and making false entries in bank records, in violation of 18 U.S.C. Sec. 371; (2) substantive crimes of bank fraud, criminal misapplication, and making false entries in bank records, in violation of 18 U.S.C. Sec. 1344, 18 U.S.C. Sec. 657, and 18 U.S.C. Sec. 1006; and (3) engaging in a monetary transaction affecting interstate commerce in criminally derived property over $10,000, in violation of 18 U.S.C. Sec. 1957. The indictment essentially accuses Menichino of participating in a $14 million "loan kiting" scheme to defraud Great Lakes Bancorp of Ann Arbor, Michigan.
 
 
 2
 Over a period of three years, Menichino and a group of co-conspirators formed a series of corporations. They used funds borrowed by a new corporation to pay off loans which were in the name of earlier-formed corporations. Obviously, some of the funds went into the co-conspirators' pockets, as well. It is unclear in the record whether these corporations ever engaged in any productive business, or were merely sham structures. At some point in time, the group decided to "branch out", and they expanded their operation from Michigan to Florida and Alaska, using the same method.
 
 
 3
 Eventually, three different indictments were filed against Menichino. Two were brought in the Middle District of Florida, carrying case numbers 90-216-CR-T-15(C) and 90-350-CR-T-(A). Both Florida indictments resulted in convictions. The conviction in case number 90-216 was affirmed in United States v. Menichino, 989 F.2d 438 (11th Cir.1993). The second case, number 90-350, apparently did not produce a reported opinion. The third is the instant case, in which Menichino pleaded guilty to 14 counts of bank fraud and was sentenced to 10 years in prison, to be served consecutively to the unexpired sentences from Florida in cases 90-216 and 90-350. He was also ordered to pay $5,316,635 in restitution to Great Lakes Bancorp prior to the termination of his three-year supervised release following incarceration.
 
 
 4
 On appeal, the defendant raises five issues for our consideration, alleging (1) that the district court erred in denying his motion to dismiss on double jeopardy grounds; (2) that the district court further erred in denying his motion to dismiss for prosecutorial misconduct; (3) that he was denied the effective assistance of counsel at sentencing; (4) that the district court erred in assessing the amount of restitution to be paid; and (5) that the district judge abused his discretion in various respects in determining Menichino's sentence. After reviewing the record on appeal, we conclude that Menichino's convictions should be affirmed but that a limited remand is necessary with regard to his sentence.
 
 I. Double Jeopardy
 
 5
 The Fifth Amendment Double Jeopardy clause affords three protections for the criminal defendant. It protects against a second prosecution for the same offense after either (1) acquittal or (2) conviction, and (3) protects against multiple punishments for the same offense. Brown v. Ohio, 432 U.S. 161, 165 (1977). Menichino alleges that he has been subjected to "successive prosecutions" in violation of the first and second double jeopardy principles. He further alleges that the indictment contains "multiplicitous charges", in violation of the third double jeopardy proscription.
 
 
 6
 When raising a claim of double jeopardy, the defendant must first show a factual basis that his claim is not frivolous. United States v. Jabara, 644 F.2d 574, 576 (6th Cir.1981). The government must then prove by a preponderance of the evidence that it is not seeking to prosecute the same offense a second time under a totality of the circumstances test. Id. at 576-77. On appeal, the trial court's factual findings are subject to a clearly erroneous standard, even if based solely on documentary evidence. Id. at 577. The legal issue of double jeopardy is subject to de novo review. Costo v. United States, 904 F.2d 344, 346 (6th Cir.1990).
 
 A. Waiver
 
 7
 The government contends as a threshold matter that Menichino's double jeopardy claim is foreclosed by his guilty plea. Menichino initially raised the double jeopardy argument, then pleaded guilty, and then raised the same argument again in a motion to dismiss filed on the eve of sentencing.
 
 
 8
 When a defendant knowingly, willingly, and with the benefit of competent counsel, pleads guilty, he waives all non-jurisdictional defects. United States v. Cox, 464 F.2d 937 (6th Cir.1972). A guilty plea generally precludes claims of antecedent constitutional violations. Parker v. North Carolina, 397 U.S. 790 (1970). The Supreme Court has recognized, however, that a double jeopardy claim may constitute an exception to this rule. Blackledge v. Perry, 417 U.S. 21 (1974). The Court has further elaborated on Blackledge, explaining that the double jeopardy clause is distinctive, because it has the practical result of preventing a trial from taking place at all, rather than prescribing procedural rules that govern the conduct of a trial. Robinson v. Neil, 409 U.S. 505, 509 (1973). However, the Court specified, "We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that--judged on its face--the charge is one which the State may not constitutionally prosecute." Menna v. New York, 423 U.S. 61, 63, n. 2 (1975) (per curiam). Indeed, the Court later held that a double jeopardy argument had been waived where the defendants had pleaded guilty to two separate conspiracy indictments within a single proceeding in the district court. The Court concluded that the double jeopardy argument (that the acts which formed the basis for the indictments were part of a single conspiracy, for which two prosecutions could not be had) was necessarily foreclosed by the admissions which inhered in their pleas. United States v. Broce, 488 U.S. 563, 576 (1989).
 
 
 9
 The rule which emerges from this line of cases is that waiver of a double jeopardy argument cannot be determined without a "peek" at the merits. Although this court has not addressed the specific question presented here, we have held that a double jeopardy allegation, raised at sentencing following a plea of guilty, must be deemed waived when not argued on appeal. Rauschenberg v. United States, 875 F.2d 866 (6th Cir.1989) (unpublished opinion).
 
 
 10
 Here, the issue has been raised on appeal, and, in an abundance of caution, we conclude that it should be addressed on its merits.
 
 B. The Florida Charges
 
 11
 Menichino argues that the instant prosecution violates the proscriptions of the double jeopardy clause, because of the earlier Florida prosecutions. He alleges that the actions which formed the basis for the three indictments were part of but one conspiracy.
 
 
 12
 Double jeopardy does not bar a second prosecution where each statutory provision requires proof of a fact that the other does not. Blockburger v. United States, 284 U.S. 299, 304 (1982). The Sixth Circuit applies the "totality of the circumstances" test to determine whether successive conspiracy indictments charge the "same offense" within the meaning of the Double Jeopardy clause. United States v. Benton, 852 F.2d 1456, 1463-65 (6th Cir.1988), cert. denied, 488 U.S. 993 (1988). The test is applied to answer the question of whether a single conspiracy or multiple conspiracies existed. Id.
 
 
 13
 Under the "totality of the circumstances" test, five factors are considered: (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and (5) places where the events of the conspiracy took place. In re Grand Jury Proceedings, 797 F.2d 1377, 1380 (6th Cir.1986), cert denied, 479 U.S. 1031 (1987). Where several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses. Benton, supra, at 1462 (citing United States v. Sinito, 723 F.2d 1250, 1256-57 (6th Cir.1983)).
 
 
 14
 The district court in this case found a "wide divergence" of the factors among the conspiracies. The indictment in case number 90-216 contained six counts of allegations of conspiracy to commit bank, mail, and wire fraud, and substantive bank, wire, and mail fraud. Menichino and a John Hickman were accused of participating in a scheme to inflate the appraisal value of a yacht berthed in Florida so that a Georgia bank would grant a prospective purchaser of the yacht a loan exceeding the actual purchase price of the boat. The object of the conspiracy was to divide the excess sum between Menichino and the purchaser. These events occurred during November and December 1989.
 
 
 15
 The indictment in case number 90-350 charged four counts of conspiracy to commit bank fraud against a Florida bank; substantive bank fraud; and bribery of an officer of the bank. The crux of the indictment was that Menichino conspired with a loan officer of that bank to obtain a series of loans and a credit card for Menichino and his businesses. These events spanned the period of May 1988 through March 1989. One transaction did involve the Michigan bank, but most of the activities took place in Florida.
 
 
 16
 The Michigan indictment contains 46 counts, which revolve around a loan-kiting scheme by Menichino, Henry Perri, and Timothy Claus. These activities occurred from January 1986 through December 1988. Most of the activities occurred in Michigan, although some apparently occurred in Florida and Alaska.
 
 
 17
 The district judge found that the three indictments were "markedly different". Each conspiracy involved a different victim bank and different times, places, co-conspirators, and nature and scope of activities. Although there were some overlaps, they were found to be minimal. As the district judge noted, "Employing one type of deception over and over does not ipso facto make an 'overarching conspiracy' ". He found that under the totality of the circumstances, the separate indictments concerned separate conspiracies and did not pose double jeopardy problems.
 
 
 18
 Our review of the record on appeal convinces us that the district judge ruled correctly on the question of double jeopardy. Certainly, we cannot say that his factual findings were clearly erroneous, and we decline to reverse on this basis.
 
 C. Multiplicity
 
 19
 Menichino contends that because a single offense of bank fraud is charged in 14 counts of the Michigan indictment, these counts are multiplicitous, in violation of the double jeopardy clause. As this court has noted:
 
 
 20
 A multiplicitous indictment charges a single offense in several counts. Its dangers are that the defendant may be given multiple sentences for what Congress considered a single offense, and that prolix recitations may falsely suggest to a jury that a defendant has committed not one but several crimes.
 
 
 21
 United States v. Duncan, 850 F.2d 1104, 1108 n. 4 (6th Cir.1988), cert. denied, 493 U.S. 1025 (1990).
 
 
 22
 In resolving the multiplicity claim, the critical question is whether Congress intended the acts charged under a statute to constitute a single crime or multiple offenses. United States v. Lilly, 983 F.2d 300, 302 (1st Cir.1992).
 
 
 23
 In a recent case, we addressed a claim of multiplicity under the bank fraud statute. See United States v. Anders, 1993 WL 533529, 1993 U.S.App. LEXIS 34033 (unpublished opinion filed Dec. 21, 1993). Anders was convicted of three counts of bank fraud and one count of misapplying bank funds. The Anders court construed 18 U.S.C.A. Sec. 1344, the statute under which Menichino pleaded guilty, to permit a separate count for each "execution" of a common scheme, as opposed to each "act in furtherance" of the scheme.
 
 
 24
 In deciding Anders, a case of first impression in this circuit, we examined several cases from other circuits. For example, in United States v. Poliak, 823 F.2d 371 (9th Cir.1987), cert. denied, 485 U.S. 1029 (1988), the defendant set up a check-kiting operation that involved three checking accounts at three separate banks in the names of three fictitious businesses. Poliak was charged with and convicted of ten counts of bank fraud, one for each check written during the scheme. The court held that each time Poliak wrote a check, a different and separate execution of the scheme to defraud occurred. Id. at 372.
 
 
 25
 In United States v. Lilly, by contrast, the defendant sought a single purchase-money loan from the subject bank, to finance the purchase of a condominium development project. In his efforts to secure the loan, Lilly pre-sold condominium units on a no-money-down basis. In each of the unit agreements, Lilly overstated the purchase price and falsely stated that each buyer had made a ten percent downpayment. Lilly then assigned 29 mortgages and sets of false documents to the bank as security for a $7 million loan. He was charged with 29 counts of bank fraud. The Lilly court found that the defendant had assigned to a single bank a single package of documents that consistently misstated a single material fact in order to obtain a single loan, the proceeds of which funded a single real estate purchase, and that these facts were properly categorized as a single execution of a scheme. Id. at 303. See also United States v. Lemons, 941 F.2d 318 (5th Cir.1991), in which the court held that the fact that each act in execution of a scheme is a punishable offense under the mail or wire fraud statutes does not allow reading the bank fraud statute likewise to punish each act in execution of a scheme or artifice to defraud. The Lemons court contrasted the mail and wire fraud statutes with the bank fraud statute, which imposes punishment only for each execution of the scheme.
 
 
 26
 Two transactions may have a common purpose but constitute separate executions of a scheme when each involves a new and separate obligation to be truthful. United States v. Molinaro, 11 F.3d 853 (9th Cir.1993); United States v. Harris, 805 F.Supp. 166 (S.D.N.Y.1992). The defendants in Harris were charged with misrepresenting the net worth of their corporation in obtaining a loan and six separate extensions of that loan. The Harris court found that each request for an extension was a new occasion for the bank to consider extending the limited loan period. The defendants were under a new obligation to be truthful each time they sought an extension. Id. at 175. Lilly, on the other hand, involved only one obligation to be truthful to the bank.
 
 
 27
 Menichino pleaded guilty to 14 counts of bank fraud. The record establishes that Menichino used nine "front" borrowers to obtain 14 discrete loans, albeit from the same bank. The application for each loan involved a separate obligation for Menichino to be truthful. We thus conclude that each fraudulently obtained loan was a separate "execution", for which separate punishments do not violate the double jeopardy clause.
 
 
 28
 Menichino is also foreclosed from arguing that he was subjected to repetitious prosecution, in violation of double jeopardy proscriptions. As this court stated in United States v. Barrett, 933 F.2d 355 (6th Cir.1991), "the double jeopardy clause protection against multiple prosecutions is not implicated in the instant case because the government prosecuted defendant for numerous charges stemming from a single course of conduct in a single proceeding." Id. at 360. All Michigan fraud charges were brought against Menichino at one time.
 
 
 29
 Menichino's motion to dismiss on the basis of his double jeopardy arguments was properly denied by the district court.
 
 
 30
 II. Prosecutorial Misconduct.
 
 
 31
 Menichino filed an additional motion to dismiss, in which he alleged that the Michigan indictment amounted to vindictive prosecution and that the government had engaged in other prosecutorial misconduct in pursuing the Michigan indictment.
 
 
 32
 In reviewing a claim of prosecutorial misconduct, the court must assess the prosecutor's actions in the context of the trial and evaluate whether the conduct in question had a tendency to mislead the jury and prejudice the accused; the extent to which the claimed misconduct was deliberate or accidental; whether the conduct was isolated or extensive; and the strength of the competent proof to establish the guilt of the accused. Angel v. Overberg, 682 F.2d 605, 608 (6th Cir.1982).
 
 
 33
 A prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted. United States v. Anderson, 923 F.2d 450, 453 (6th Cir.1991), cert. denied, 499 U.S. 980 (1991); United States v. Andrews, 633 F.2d 449, 453-55 (6th Cir.1980), cert. denied, 450 U.S. 927 (1981). A person who claims to have been vindictively prosecuted must show that the prosecutor has some "stake" in deterring the petitioner's exercise of his rights, and that the prosecutor's conduct was somehow unreasonable. Id.
 
 
 34
 When a defendant claims that "augmentation" of charges amounts to prosecutorial vindictiveness, the court must determine whether there is "a realistic likelihood of vindictiveness". United States v. Andrews, supra, at 456. If the court finds that there is a "realistic likelihood of vindictiveness", the government bears the burden of disproving it. Id. If the court finds no likelihood of vindictiveness, the burden never shifts.
 
 
 35
 Because of the evolving nature of many criminal prosecutions and associated investigations, a court must be cautious in finding prosecutorial vindictiveness prior to trial. United States v. Goodwin, 457 U.S. 368, 381 (1982). A prosecutor should be afforded broad latitude before trial to determine the social interest in prosecution. Id. However, in the post-trial setting, vindictiveness can be presumed when a defendant successfully appeals a conviction and the prosecutor reindicts on more severe charges. North Carolina v. Pearce, 395 U.S. 711 (1969); Blackledge v. Perry, 417 U.S. 21 (1974).
 
 A. Prosecutorial Misconduct
 
 36
 In this case, defendant Menichino alleges several instances of misconduct.
 
 
 37
 The first allegation is that government representatives provided false information to a Florida grand jury. Menichino claims that the Assistant U.S. Attorney working on the Michigan case "lied" to the Assistant U.S. Attorney in Florida and to an FBI agent who testified before the grand jury in Florida. The Michigan Assistant U.S. Attorney supposedly falsely indicated that Menichino and one of his co-conspirators had already been indicted in Michigan at the time of the Florida grand jury investigation. Menichino appends a transcript from the grand jury hearing, which does show that the Florida Assistant U.S. Attorney and the FBI agent assigned to his case mentioned an indictment in Michigan against a co-conspirator. There is, however, no mention of a Michigan indictment against Menichino. The grand jury proceedings are dated December 19, 1990, and Menichino was not indicted until July 22, 1992. The record on appeal does not show the date of the co-conspirator's indictment. As a result, Menichino has failed to show any facts which would indicate that the prosecutor acted improperly in the Florida investigation, or even that such conduct would be relevant in this context.
 
 
 38
 Menichino's second allegation of prosecutorial misconduct is that he was not given a Rule 20 hearing. Fed.R.Crim.P. 20, Transfer From the District for Plea and Sentence, provides:
 
 
 39
 (a) Indictment or Information Pending. A defendant arrested, held, or present in a district other than that in which an indictment or information is pending against that defendant may state in writing a wish to plead guilty ..., to waive trial in the district in which the indictment or information is pending, and to consent to disposition of the case in the district in which that defendant was arrested, held, or present, subject to the approval of the United States attorney for each district.
 
 The commentary on this section elaborates:
 
 40
 This rule introduces a new procedure in the interest of defendants who intend to plead guilty and are arrested in a district other than that in which the prosecution has been instituted. This rule would accord to a defendant in such a situation an opportunity to secure a disposition of the case in the district where the arrest takes place, thereby relieving him of whatever hardship may be involved in a removal to the place where the prosecution is pending. In order to prevent possible interference with the administration of justice, however, the consent of the U.S. attorneys involved is required.
 
 
 41
 Rule 20 requires that the incarcerated defendant request a Rule 20 hearing. Menichino has not included any evidence of such a request, or the denial of it. The point is moot, however, because proceedings under Rule 20 are subject to prosecutorial discretion. A prosecutor may consent under Rule 20 to a transfer and plea in another jurisdiction, where the defendant may have lined up a deal, but need not justify refusal to consent. United States v. Smith, 953 F.2d 1060 (7th Cir.1992) (quoting Singer v. United States, 380 U.S. 24, 37 (1965)).
 
 
 42
 The record on appeal does not include the provisions made for transferring Menichino from Florida to Michigan. The government states in its brief that Menichino was already an incarcerated federal prisoner, in Florida, at the inception of the Michigan case. The Western District of Michigan utilized a writ of habeas corpus ad prosequendum, under 28 U.S.C. Sec. 2241(c)(5), to procure Menichino's presence. The writ of habeas corpus ad prosequendum is the proper vehicle to transfer a federal prisoner in one district to a second federal district for prosecution. United States v. Cooke, 795 F.2d 527, 529 (6th Cir.1986). There is simply no merit to the defendant's claim of misconduct in connection with a possible Rule 20 transfer.
 
 
 43
 The defendant's next allegation is that Assistant U.S. Attorney MacDonald filed a detention motion as a form of retaliation to deny Menichino access to a law library. The magistrate judge's order of detention specifically finds that Menichino is a career criminal whose pretrial liberty poses a danger to the community, citing Menichino's 13 major felony convictions, two of which were committed while he was on parole. We conclude that he government's detention motion was amply warranted by Menichino's history.
 
 
 44
 Menichino's final allegation of prosecutorial misconduct is that the government violated the "spirit" of the plea agreement. Menichino alleges that the prosecution broke promises to him by bringing new charges; enhancing his "level" (which one is not specified) from 4 to 6; claiming additional victims; failing "sincerely" to recommend an acceptance of responsibility reduction; and asserting that Menichino held more than a minimal role in the conspiracy. However, the plea agreement that Menichino signed was specific in its provisions, as follows:
 
 
 45
 5. A. Base Offense Level: (Sec. 2F1.1) = 06
 
 Specific Offense Characteristics
 
 46
 ----------------------------------
 
 Loss 2F1.1(b)(1)(L) = 11
 More than minimal planning = 02
 2F1.1(b)(2)
 Adjusted Base Offense Level = 19
 Criminal History Category = IV (four)
 
 47
 * * *
 
 
 48
 8. No new charges will be filed against the defendant arising from his banking activities at Great Lakes Bancorp.
 
 
 49
 9. The United States agrees to recommend: a two level reduction for acceptance of responsibility provided that the defendant makes a sincere statement of remorse and honestly admits his involvement in bank fraud. This is not a binding recommendation. Fed.R.Crim.P. 11(e)(1)(B).
 
 
 50
 Menichino's subjective beliefs regarding his plea are irrelevant. United States v. Oliverio, 706 F.2d 185, 186 (6th Cir.1983). Plea agreements are reviewed under contractual principles, and courts apply an objective standard, disregarding allegations of subjective beliefs. United States v. Herrera, 928 F.2d 769 (6th Cir.1991). In any event, the claims here are patently without merit. No new charges were brought after the plea agreement was signed. The plea agreement stated on its face the levels to which Menichino assented by his signature. Likewise, the agreement specified that Menichino would be held responsible for "more than minimal planning".
 
 
 51
 If Menichino did not receive an acceptance of responsibility credit, he cannot complain that it was due to any action, let alone misconduct, by the government. The sentencing judge explained his denial of the acceptance of responsibility credit at length:
 
 
 52
 It's not general practice to not accord that [reduction] where an individual has come before this court and said I wish to plead guilty and I will tell you what I did that I think makes me guilty.
 
 
 53
 There are a limited number of circumstances ... where a guilty plea is entered but an acceptance of responsibility is not given. I say "limited," because I think that they're somewhat unusual when they occur, and I think this is just such an unusual circumstance.
 
 
 54
 I predicate this conclusion not upon anything the government has said, not upon anything anyone else has said, but merely upon this defendant's testimony before this Court. He realizes that he engaged in what he concurs was a false pretense or a scheme to get money, which is sufficient for the guilty plea, but he continues on to say it was trying to make the companies successful.... In other words, "The means that I used were wrong, but the end I wished to achieve was meritorious."
 
 
 55
 ... Acceptance of responsibility must be an acknowledgement that the means which were used were unacceptable for the result that was wished to be obtained.... I'm not hearing that. I'm hearing, "I gave it my best shot. The bank president backed out on me just because of my status. I did everything I could in the best of the free enterprise tradition of the American work ethic to get these corporations out and on the go." (Emphasis added.)
 
 
 56
 We find no merit to the defendant's claims that he was the victim of prosecutorial misconduct.
 
 B. Prosecutorial Vindictiveness
 
 57
 Nor does there appear to be any factual basis for the defendant's claim of prosecutorial vindictiveness. It is based on Menichino's contention that the Michigan prosecution, in the wake of the Florida proceedings, represents vindictive behavior on the part of the prosecutor. But, obviously, Menichino did not succeed in contesting the Florida charges. Thus, it cannot be said that he was penalized for successfully defending himself in those proceedings.
 
 
 58
 Menichino also intimates that the Michigan Assistant U.S. Attorney was vindictive in his pursuit of a detention order for Menichino, pending trial. In light of Menichino's lengthy criminal history, however, the detention order was objectively justified.
 
 
 59
 We thus find no merit to the defendant's claim of vindictive prosecution.
 
 
 60
 III. Ineffective Assistance of Counsel at Sentencing
 
 
 61
 Menichino claims that he was denied effective assistance of counsel at sentencing, because his attorney allegedly (1) did not obtain the presentence report ten days prior to sentencing; (2) failed to subpoena certain witnesses; and (3) did not request an adjournment.
 
 
 62
 Ineffective assistance of counsel claims generally are not cognizable in a direct criminal appeal, but are properly asserted in a proceeding under 28 U.S.C. Sec. 2255. United States v. Goodlett, 3 F.3d 976, 980 (6th Cir.1993); United States v. Hill, 688 F.2d 18, 21-22 (6th Cir.1982) (per curiam), cert. denied, 459 U.S. 1074 (1982). Such claims almost always depend upon matters that are external to the record in the district court. Hill, 688 F.2d at 21. Thus, when no evidentiary hearing on the issue of ineffective assistance of counsel has been held in the district court, the circuit court generally will not address that issue on direct appeal. United States v. Martin, 345, 349 (6th Cir.1990); Hill, 688 F.2d at 21.
 
 
 63
 Of course, the court may address a claim of ineffective assistance of counsel in a direct criminal appeal if the record is adequate to permit the court to assess the merits of the claim. Goodlett, 3 F.3d at 980; United States v. August, 984 F.2d 705, 711 (6th Cir.1992) (per curiam), cert. denied, 114 S.Ct. 158 (1993). Moreover, a denial of the ineffective assistance claim on direct appeal is made without prejudice to the defendant's right to seek later relief in the post-conviction setting, under Sec. 2255. Hill, 688 F.2d at 21.
 
 
 64
 In this case, the district court did not address Menichino's ineffective assistance claim, and there is no record to review in connection with this claim. We therefore decline to address it on direct appeal.
 
 IV. Restitution
 
 65
 We are concerned, however, about the district court's calculation and assessment of restitution against Menichino. The amount of financial loss to the defrauded bank, Great Lakes Bancorp, as the result of the defendant's criminal conduct is not seriously disputed. But, as the defendant points out, the district court assessed restitution totalling $5,315,635 in an altogether perfunctory manner, without any apparent consideration of the defendant's ability to pay.
 
 
 66
 The government responds that the defendant has waived any complaint he may have relating to the issue of restitution, especially as to its amount, because he made no objection to the assessment at the time of sentencing. A challenge to the amount of restitution ordered is ordinarily reviewed under an abuse of discretion standard. United States v. Guardino, 972 F.2d 682, 686 (6th Cir.1992). Where, as here, no objection is made to the order of restitution at sentencing, the appellate court reviews for plain error. United States v. Nagi, 947 F.2d 211, 213 (6th Cir.1991), cert. denied, 112 S.Ct. 2309 (1992).
 
 
 67
 The sentencing guidelines require the district courts to impose restitution orders, USSG Sec. 5E1.1, and a bank fraud conviction is a criminal offense subject to such an order. 18 U.S.C. Sec. 3663(a). 18 U.S.C. Sec. 3664(a) sets forth the applicable standard:
 
 
 68
 The court, in determining whether to order restitution ... and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.
 
 
 69
 The burden of proof for establishing lack of financial resources to pay restitution is on the defendant. 18 U.S.C. Sec. 3664(d).
 
 
 70
 This court has "never held that the court must make findings on the Defendant's financial condition, and it is clear that the statute does not require findings." United States v. Purther, 823 F.2d 965, 969 (6th Cir.1987); United States v. Mounts, 793 F.2d 125, 128 (6th Cir.1986), cert. denied, 479 U.S. 1019 (1986). However, the record must contain some indication that the sentencing court considered the defendant's financial condition in ordering restitution. Purther, 823 F.2d at 969. This requirement may be satisfied by an indication in the record that the district judge considered the presentence report and that the presentence report contained specific information about the defendant's education and employment, and a specific recommendation of restitution. Hunter, supra.
 
 
 71
 The record before us is insufficient to determine whether or not the district court considered the statutory factors. The sentencing order appears on its face to contain a glaring incongruity. The district judge waived imposition of a fine (authorized at $10,000 to $100,000) because of the defendant's financial inability to pay a fine, while at the same time ordering payment of restitution of more than $5 million. Moreover, the record before us fails to explain how the district judge could have found the defendant financially able to pay full restitution at the same time he found the defendant financially unable to pay a fine that, relatively speaking, would have been modest in comparison to the amount of restitution.
 
 
 72
 We conclude that the appropriate path to take at this juncture is a remand to the district court for the limited purpose of reassessing restitution under 18 U.S.C. Sec. 3664(a).
 
 V. Sentencing
 
 73
 Menichino alleges that the district court erred in calculating his sentence under the sentencing guidelines and in refusing to modify the sentence pursuant to his Rule 35 motion.
 
 
 74
 District courts are required to treat the guidelines as a sentencing imperative. United States v. Davern, 970 F.2d 1490, 1492 (6th Cir.1992), cert. denied, 113 S.Ct. 1289 (1993). When we review a sentencing order, we do so de novo as to the application and interpretation of the guidelines, but we must uphold a sentencing court's findings of fact unless clearly erroneous. Id. Factual disputes at sentencing are resolved under a preponderance of the evidence standard. United States v. Chambers, 944 F.2d 1253, 1271 (6th Cir.1991), cert. denied, 112 S.Ct. 1217 (1992).
 
 
 75
 Two days after he was sentenced, Menichino filed a "motion to correct sentence" under Fed.R.Crim.P. 35(c), alleging an array of errors in his sentence. Menichino claimed that the district court: (1) did not honor the Rule 11 plea agreement; (2) improperly used previous convictions (from 1972 and 1973 cases) for enhancement; (3) erred by enhancing his sentence for leadership of a criminal enterprise involving more than five participants; (4) did not allow a three-point reduction for acceptance of responsibility; and (5) failed to run this sentence concurrent with the Florida sentences.
 
 
 76
 Rule 35(c) allows for correction of a sentence that was imposed as a result of arithmetical, technical, or other clear error. Rule 35 is intended to be a very narrow form of relief which extends only to mistakes that would "almost certainly result in a remand of the case". Fed.R.Crim.P. 35(c) Advisory Committee Notes (1991 Amendment). It was never "dintended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or of the sentence". Id. See U.S. v. Fraley, 988 F.2d 4, 6 (4th Cir.1993).
 
 
 77
 The district court properly denied the defendant's "motion to reduce and correct sentence" pursuant to Rule 35. Most of the issues contained in the motion were properly raised on appeal, however, and are now before us for review.
 
 
 78
 As to the contention regarding the sentencing court's purported failure to honor the defendant's plea agreement with the government, Menichino complains that the district judge enhanced his sentence based on conduct that was contained in counts which were dismissed as part of the plea bargain. He claims that this decision deprived him of the benefit of the plea bargain, under which he received a base offense level of 6 and an 11-point enhancement for the loss. Menichino contends that the sentencing court looked at the renewal notes for the loans to increase the loss calculation from $5,000,000 to $14,000,000. In fact, the judge departed upward on the basis of Menichino's criminal history, and this departure in no way deprived Menichino of the benefit of his plea bargain.
 
 
 79
 The district court included a 1973 and a 1974 conviction for drug-trafficking when it computed Menichino's criminal history. Menichino collaterally attacks the validity of the earlier convictions, but not the evidentiary propriety of their use at trial. The district court overruled these objections. It is within the discretion of the district court to determine whether a defendant may collaterally attack a prior conviction. United States v. Hoffman, 982 F.2d 187, 191 (6th Cir.1992).
 
 
 80
 Moreover, the defendant has the burden of showing that his prior convictions were constitutionally invalid for purposes of calculating his criminal history category. United States v. McGlocklin, 8 F.3d 1037 (6th Cir.1993). Menichino admitted at sentencing that he was in fact guilty of the challenged convictions. He urges that a letter from the Assistant U.S. Attorney who prosecuted the earlier charges regarding the plea agreements in those cases demonstrates a flaw in the convictions. However, the district court found that the letter was nothing more than "a recommendation" and that there was "nothing fatally defective about the nature of the convictions." We conclude that the district court did not abuse its discretion when it relied on the prior convictions in computing Menichino's criminal history category.
 
 
 81
 Menichino next argues that the sentencing court erred in applying USSG Sec. 3B1.1, regarding leadership of a criminal organization, to increase his offense level by four points.
 
 
 82
 Appellate courts review a sentencing court's application of an enhancement for clear error. 18 U.S.C. Sec. 3724(e); United States v. Perry, 991 F.2d 304, 311 (6th Cir.1993). Section 3B1.1 enhancement can be based on leadership of either a five-or-more-participant organization or an "otherwise extensive" organization. USSG Sec. 3B1.1(a). The district judge concluded that both of these alternative factors were satisfied, after finding that there were six members of Menichino's group of co-conspirators and that the organization was "otherwise extensive". The defendant has shown no evidence which would indicate that these findings were clearly erroneous.
 
 
 83
 USSG Sec. 3E1.1 gives the sentencing judge the discretion to grant a two-point reduction where the defendant "clearly demonstrates acceptance of responsibility for the offense". However, a guilty plea does not entitle a defendant to a Sec. 3E1.1 reduction as a matter of right. United States v. Christoph, 904 F.2d 1036, 1040 (6th Cir.1990), cert. denied, 498 U.S. 1041 (1991). The burden of proving the acceptance of responsibility is on the defendant, id., and remorse is an established ingredient in the defendant's burden of establishing acceptance of responsibility. United States v. Chambers, 944 F.2d 1253, 1270 (6th Cir.1991), cert. denied, 112 S.Ct. 1217 (1992).
 
 
 84
 The sentencing court's findings on the issue of acceptance of responsibility will not be reversed on appeal unless clearly erroneous. United States v. Phibbs, 999 F.2d 1053 (6th Cir.1993); United States v. Chambers, 944 F.2d at 1270. In this case, the district court's findings on Menichino's acceptance of responsibility, or lack thereof, are discussed in a previous section of this opinion, and they show convincingly that the sentencing judge did not abuse his discretion in denying Menichino a two-point reduction in this regard.
 
 
 85
 Menichino further claims that the district court should have run his sentence in this case concurrently with the sentences imposed in the Florida convictions. However, USSG Sec. 5G1.3 requires that a subsequently imposed sentence be served consecutively to any unexpired sentence. The district court merely applied the directives of the sentencing guidelines. There is no error in this regard.
 
 
 86
 Menichino also intimates that the upward departure in his sentence was inappropriate, but a review of the relevant guidelines suggests otherwise. USSG Sec. 4A1.3 expressly provides for upward departure where the defendant's criminal history category fails adequately to reflect the seriousness of the defendant's past criminal conduct or the likelihood that he will commit other crimes. United States v. Bennett, 975 F.2d 305, 309 (6th Cir.1992). Upward departures must be supported by specific factual findings, see 18 U.S.C. Sec. 3553(c)(2), and must satisfy a three part test: First, are the circumstances of this case "sufficiently unusual", as a matter of law, to justify a departure? Second, are the factual findings of the sentencing court adequate to support departure? And finally, is the departure reasonable in its extent? United States v. Joan, 883 F.2d 491, 493-94 (6th Cir.1989); see also United States v. Rodriguez, 882 F.2d 1059, 1067 (6th Cir.1989), cert. denied, 493 U.S. 1084 (1990). As a general rule, the appellate court will defer to the sentencing court's "superior 'feel' for the case". United States v. Joan, 883 F.2d at 494. When the departure involves the criminal history category, the district court "must demonstrate that it found the sentence imposed by the next higher level too lenient". United States v. Lassiter, 929 F.2d 267, 270 (6th Cir.1991).
 
 
 87
 Here, the district judge clearly fulfilled the requirements for an upward departure. He found that, at 21 points, Menichino's criminal history score was eight points beyond the highest criminal history score provided for in the sentencing table. Moreover, he conducted a hearing to determine the reliability of the convictions on which that score was based.
 
 
 88
 In the end, the sentencing judge departed upward two categories. The last criminal history category in the 1988 sentencing table (by which Menichino's sentence was computed) is Category VI, based on "13 or more points". Categories III, IV and V each range across three points. The district judge "extrapolated" from the existing table, allotting 13, 14 and 15 points to Category VI, and creating Category VII with 16, 17 and 18 points and Category VIII with 19, 20 and 21 points. He then established the final range by moving down the Category VI column by two offense levels. The use of this extrapolated sentencing table was reasonable and factually supported, in light of the unusual circumstances of this case. We find no legal basis upon which to disturb the sentencing order.
 
 
 89
 For the foregoing reasons, we AFFIRM the judgment of conviction and the sentence imposed on the defendant, except for the order of restitution. The case is REMANDED to the district court for the limited purpose of reconsidering the assessment of restitution, in light of this opinion.